IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ACS, LLC, | } |
| Plaintiff, | } |
| | } CIVIL ACTION NO. |
| v. | } 08-AR-1196-S |
| METAL-ERA, INC., | } |
| Defendant. | } |

**MEMORANDUM OPINION**

At the court's motion docket on July 18, 2008, the court heard oral argument on the question of whether it has subject-matter jurisdiction over the above-entitled action removed to this court by defendant, Metal-Era, Inc. ("Metal-Era"), from the Circuit Court of Jefferson County, Alabama, Bessemer Division. Federal courts, being courts of limited jurisdiction, are obligated to make sure of their subject-matter jurisdiction before proceeding.

As its bases for jurisdiction, Metal-Era invokes 28 U.S.C. §§ 1332, 1441, and 1446. In its notice of removal, it alleges that it and plaintiff, ACS, LLC ("ACS"), have diverse citizenships. ACS concedes this essential element of § 1332 jurisdiction. However, in Metal-Era's attempt to allege the second essential jurisdictional element, namely, that the amount in controversy exceeds $75,000, it runs squarely into the double-whammy set up by the Eleventh Circuit in *Ericsson GE Mobile Comms. v. Motorola Comms. & Elecs.*, 120 F. 3d 216 (11th Cir. 1998) ("*Ericsson*"), and *Lowery v. Alabama Power Co.*, 483 F. 3d 1184 (11th Cir. 2007), *cert.*

*denied*, ____ U.S. ____, 128 S. Ct. 2877 (2008) ("*Lowery*"). *Ericsson* and *Lowery* were both decided by the Eleventh Circuit on appeal from this court.  Separately and in tandem *Ericsson* and *Lowery* block Metal-Era's access to this court.

Metal-Era concedes that ACS seeks only declaratory relief. ACS asks only that this court agree with it that it succeeded in terminating a license agreement between the parties.  Metal-Era claims that the agreement is worth over $75,000, and thus that the amount in controversy required by 28 U.S.C. § 1332 is satisfied. ACS relies on *Ericsson* and *Lowery*, and on this court's *sua sponte* obligation to examine its own jurisdiction.  Metal-Era acknowledges that it has the burden of proving the jurisdictional elements.

## **Pertinent Jurisdictional Facts**

ACS and Metal-Era entered into a written license agreement on March 31, 2006, wherein ACS granted Metal-Era an exclusive right to make, use, and sell products using intellectual property that ACS owned and the right to use ACS's registered trademark in conjunction with the sales of the covered products.  In exchange, Metal-Era agreed to pay ACS royalty payments based on a percentage of Metal-Era's total annual sales of the licensed products.  The contract further provided that if Metal-Era's total annual sales did not reach a certain amount, Metal-Era was obligated immediately to pay ACS a lump sum royalty payment of $75,000.00.  For the

payment period ending March 31, 2008, Metal-Era did not reach the specified minimum of sales, but it did not make the lump sum payment. ACS thereupon notified Metal-Era of immediate termination. Metal-Era takes the position that the agreement required ACS to give it thirty days notice before termination, and that Metal-Era could cure a non-payment within that thirty day period. In response, ACS filed this declaratory judgment action in state court. ACS does not sue for the unpaid $75,000 lump sum, or for any other sum of money. It only seeks a declaration that the license agreement was automatically terminated upon Metal-Era's non-payment, a termination subsequently memorialized by ACS's notice that Metal-Era no longer has any right to operate as ACS's licensee. As a part of its complaint, ACS also seeks a declaration that it was not required to give Metal-Era thirty days within which to cure the default. After removal, Metal-Era filed an answer. It filed no counterclaim. Of course, if it had filed a counterclaim seeking damages of more than $75,000, the counterclaim would not have succeeded in bootstrapping jurisdiction.

In its notice of removal, Metal-Era necessarily alleges that there is more than $75,000 in controversy. In support of this hopeful conclusion, it makes several arguments. First, it says that because the agreement guaranteed ACS royalty payments of at least $75,000.00 per year through 2012 and beyond, the validity of the agreement puts more than $75,000.00 in controversy. Second, it

points out that in ACS's state court complaint, it acknowledged that Metal-Era had $498,864.80 in sales of its ACS-licensed products in the year ending on March 31, 2008. Thus, Metal-Era argues, ACS's right to operate without Metal-Era will give ACS a windfall in sales of nearly $500,000, an amount far exceeding the jurisdictional requirement. Last, Metal-Era asserts that ACS has attached to its complaint correspondence from Metal-Era evidencing that on August 3, 2007, Metal-Era made a buy-out offer to ACS in the amount of $500,000.00, an offer that ACS declined. Metal-Era would have the court conclude from these arguments that it appears from the complaint that the matter in controversy exceeds $75,000.

## **Analysis**

In *Lowery*, the Eleventh Circuit held:

> [W]e conclude that the removal-remand scheme set forth in 28 U.S.C. §§ 1446(b) and 1447(c) requires that a court review the propriety of the removal on the basis of the removing documents. If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction. If not, the court must remand. Under this approach, jurisdiction is either evident from the removing documents or remand is appropriate... [U]nder § 1446(b), in assessing the propriety of removal, the court considers the documents received by the defendant from the plaintiff - be it the initial complaint or a later received paper - and determines whether that document and the notice of removal unambiguously establish federal jurisdiction. This inquiry is at the heart of a case, such as the one before us, in which the plaintiffs challenge removal by filing a timely motion to remand under § 1447(c).

483 F. 3d 1211. After receiving the *Lowery* opinion, this court in

*Constant v. International House of Pancakes*, 487 F. Supp. 2d 1308, 1313 (N.D. Ala. 2007), expressed its understanding of *Lowery* and held that a district court in considering a diversity removal cannot speculate about what the case is worth when the plaintiff does not make it plain in the complaint. The requisite amount in controversy must appear from the face of the complaint and logical deductions therefrom. In the instant case, this court cannot logically deduce the existence of more than $75,000 in controversy from ACS's complaint. ACS seeks only declaratory relief. It does not seek money damages. It only wants relief in the form of a court recognition of its termination of a contract.

As *Ericsson* points out: "The amount in controversy is measured by the value of the object of the litigation **to the plaintiff**." 120 F.3d at 218. The Eleventh Circuit has stuck with the "plaintiff-viewpoint" rule, holding that in determining "the amount in controversy", the only perspective from which to make the determination is from the "plaintiff's viewpoint". *Id.* at 218-19. Metal-Era's potential economic loss if Metal-Era loses its right to be ACS's licensee is not relevant to a determination of the amount in controversy under the "plaintiffs viewpoint" rule. In *Ericsson*, the plaintiff, Ericsson, had high hopes (this court believed it to be a legitimate hope) that the court ordered avoidance of a contract between Ericsson's competitor, Motorola, and the City of Birmingham, could realistically be expected to result in Ericsson's

5

obtaining the contract and thus making a few million dollars. But, in *Ericsson*, as here, there was no guarantee of future profit to the plaintiff as a result of the relief being sought. ACS may have the same high hopes of making a million dollars that Ericsson had, but there is no guarantee of financial reward from the relief it seeks. In fact, for aught appearing, ACS's motivation in terminating Metal-Era was not money, but principle, or the product of a personality conflict. In any event, the ultimate result of a contract termination is just as speculative as the hoped-for result in *Ericsson*.

This court wishes that the Eleventh Circuit would adopt the "either-viewpoint" rule employed by a majority of the circuits. *See, e.g., Ericsson GE Mobile Communications v. Motorola Communications and Electronics*, 179 F.R.D. 328, (N.D. Ala. 1998); *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002); *In re: Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2001); *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir. 1997); *Oklahoma Retail Grocers Ass'n v. Wal-Mart Stores*, 605 F.2d 1155, 1159 (10th Cir. 1979); *Williams v. Kleppe*, 539 F.2d 803, 804 n.1 (1st Cir. 1976); *Tatum v. Laird*, 444 F.2d 947, 951 (D.C. Cir. 1971); and 14C Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 3725 (3d ed. 2008). But, the Eleventh Circuit's commitment to the "plaintiff-viewpoint" rule for determining the amount in controversy cannot be ignored unless and

until the Eleventh Circuit changes its mind.  Even if it should change its mind before the ink is dry on this opinion, *Lowery* would still stand in the way of this removal by Metal-Era.

## **Conclusion**

In accordance with the foregoing and by separate order, the court will remand the case.

**DONE** this 30th day of July, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE